UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LACHERIE C.,

                         Plaintiff,

            v.

KILOLO KIJAKAZI,[1] Commissioner of
  Social Security,

                       Defendant.
_____

**DECISION
and
ORDER**

**20-CV-1212F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH HILLER
                            Attorneys for Plaintiff
                            KENNETH R. HILLER, of Counsel
                            6000 North Bailey Avenue
                            Suite 1A
                            Amherst, New York  14226
                                and
                            MELISSA MARIE KUBIAK, of Counsel
                            1200 Scottville Road
                            Building C
                            Suite 181
                            Rochester, New York  14624

                            TRINI E. ROSS
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York  14202
                                and
                            ARIELLA RENEE ZOLTAN
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of General Counsel
                            26 Federal Plaza
                            Room 3904
                            New York, New York  12078

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On April 1, 2022, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 15).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on July 2, 2021 (Dkt. 11), and by Defendant on November 29, 2021 (Dkt. 13).

## BACKGROUND

Plaintiff Lacherie C. ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA") on April 27, 2017, for Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits").  Plaintiff alleges she became disabled on February 7, 2017, based on schizophrenia, post traumatic stress disorder ("PTSD"), and a learning disability.  AR[2] at 71, 174.  Plaintiff's application initially was denied on June 12, 2017, AR at 87-89, and at Plaintiff's timely request, AR at 99-100, on February 5, 2019, an administrative hearing was held via video teleconference before Administrative Law Judge ("ALJ") Gregory M. Hamel ("the ALJ"), located in Falls Church, Virginia, AR at 40-68 ("administrative hearing").  Appearing and testifying at the hearing in Buffalo, New York were Plaintiff, then represented by Kenneth Hiller, Esq., and Nicholas DiVirgilio, Esq., with vocational expert Quintin Boston ("the VE") also appearing and testifying at the administrative hearing.

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant on March 4, 2021 (Dkt. 10).

On April 25, 2019, the ALJ issued a decision denying Plaintiff's claim, AR at 15-38 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 151-53.  On July 14, 2020, the Appeals Council adopted the ALJ's Decision that Plaintiff was not disabled through the date of the ALJ's Decision, AR at 1-7, thus rendering the ALJ's Decision the Commissioner's final decision.  On September 5, 2020, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On July 2, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 11) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 11-1) ("Plaintiff's Memorandum").  On November 29, 2021, Defendant moved for judgment on the pleadings (Dkt. 13) ("Defendant's Motion"), attaching Commissioner's Memorandum in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief, Pursuant to Local Rule 5.5 (Dkt. 13-1) ("Defendant's Memorandum").  Filed on January 5, 2022, was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 14) ("Plaintiff's Reply").

Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED in part and DENIED in part; Defendant's Motion is DENIED.  The matter is REMANDED to the Commissioner for further proceedings consistent with this Decision and Order.

**FACTS**[3]

Plaintiff Lacherie C. ("Plaintiff"), born March 17, 1997, was 19 years old as of her alleged disability onset date ("DOD") of February 7, 2017, AR at 70-71, 154, 170, 174, and 22 years old as of April 25, 2019, the date of the ALJ's decision.  AR at 33.  Plaintiff lives in a house with her family including her mother, grandmother, aunt, and brother, AR at 47-48, 183, has no children and is not responsible for any childcare, AR at 184, but takes care of her pet cat.  AR at 49, 226.

Plaintiff has a history of excessive absences from school.  AR at 203-14.  In April 2016, Plaintiff began receiving "medically prescribed home instruction" through the school district and upon applying for disability benefits on April 27, 2017, Plaintiff was in the 11th grade in special education classes, but never graduated and as of the date of the administrative hearing, Plaintiff was no longer in school.  AR at 44-45, 175, 192, 199, 220.  Plaintiff's attempt to obtain a GED was unsuccessful which Plaintiff attributes to an inability to concentrate and comprehension problems.  AR at 45-46.  Nor has Plaintiff completed any specialized job training, trade, or vocational school.  AR at 175. Plaintiff does not have a driver's license and does not drive, but walks, uses public transportation, and obtains rides from others.  AR at 50, 186 .  Plaintiff's work history includes one brief stint working part-time in a retail clothing store as a store clerk which Plaintiff ended because she could not count money to make change or close out the cash register drawer.  AR at 46-47, 53, 59.

It is undisputed that Plaintiff suffers from mental health impairments including borderline intellectual functioning, schizophrenia, PTSD, and cannabis abuse disorder.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

Plaintiff's mental health impairments have been repeatedly attributed to sexual abuse by her mother's then-boyfriend when Plaintiff was six or seven years old.  *See*, *e.g.*, AR at 264-65, 270, 372-73, 376-77, 632, 640 (referencing Plaintiff's sexual abuse at age six or seven as the predicate for Plaintiff's paranoid and psychotic delusions and PTSD, which likely lead Plaintiff to self-medicate with marijuana).  From January 24, 2017 to February 23, 2017, Plaintiff was hospitalized at Erie County Medical Center ("ECMC") in Buffalo, New York for psychiatric inpatient care of psychotic behavior and preoccupied with thoughts of the sexual abuse she endured as a young child.  AR at 372-79.  While hospitalized, Plaintiff was treated by Vinayak S. Gokhale, M.D. ("Dr. Gokhale"), and her primary care physician Mashasis Ohira, M.D. ("Dr. Ohira"), and was discharged with a diagnosis of schizophrenia and PTSD, for which Plaintiff was prescribed medications and was to continue treatment in a "partial hospitalization program" for mental health and substance abuse.  *Id*.  Thereafter, Plaintiff received psychiatric care at ECMC initially through ECMC's Navigate mental health treatment clinic ("Navigate"), where Plaintiff was treated by Natalie J. Gugino, M.D. ("Dr. Gugino"), Zhanna Elberg, M.D. ("Dr. Elberg"), Simon Lucaj, M.D. ("Dr. Lucaj"), Yogesh D. Bakhai, M.D. ("Dr. Bakhai"), as well as social workers Cheri Dietz, MSW ("MSW Dietz"), and Janelle Baker, MSW ("MWS Baker").  AR at 582-683.  On March 1, 2018, Plaintiff arrived at her counseling session at Navigate 20 minutes late and admitted being in possession of marijuana.  AR at 575-76.  Because Navigate did not offer treatment for cannabis use, Plaintiff was then discharged from Navigate and commenced treatment with ECMC Outpatient Behavioral Health's MICA program ("MICA"), where Plaintiff was treated for substance abuse and her mental health by psychiatric nurse practitioner Joan Canzoneri ("PNP Canzoneri"),

Dr. Gugino, and social worker Erin Giardina, MSW ("MSW Giardina").  AR at 494-510, 540-42, 545-80.

On June 4, 2017, Plaintiff, in connection with her disability benefits application, underwent a psychiatric evaluation by consultative psychologist Gregory Fabiano, Ph.D. ("Dr. Fabiano").  AR at 387-91.  That same day, Plaintiff also underwent an intelligence evaluation with standardized intelligence testing administered by Dr. Fabiano.  AR at 392-96.  The testing measured Plaintiff's IQ at 69 for full scale, 66 for verbal comprehension, 75 for perceptual reasoning, 89 for working memory, and 76 for processing speed.  AR at 394.


## DISCUSSION

### 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.

---

4 Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

The disability inquiry, however, does not end with the five-step analysis when there also is medical evidence of a claimant's drug addiction or alcoholism ("DAA").  20 C.F.R. § 416.935(a), *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012). Where the ALJ fails to find the claimant was disabled, then despite medical evidence of the claimant's drug or alcohol abuse, the ALJ is not required to conduct additional inquiry into the impact on Plaintiff's alcohol and substance abuse.  *Peter W. v. Comm'r of Soc. Sec.*, 2022 WL 523744, at ** 9-10 (N.D.N.Y. Feb. 22, 2022).  In contrast where, as here, the ALJ finds disability and a mental disorder, *i.e.*, schizophrenia and PTSD, the disability analysis continues and the ALJ must consider whether the evidence establishes the mental disorder would be disabling with or without the DAA, *i.e.*, whether the DAA was material to the disability finding.  *Id.*

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 27, 2017, the disability benefits application date, AR at 20, and suffers from the severe impairments of borderline intellectual functioning, schizoaffective disorder (or schizophrenia or psychotic disorder), post-traumatic stress disorder ("PTSD"), and cannabis abuse disorder, *id*. at 20, but that Plaintiff does not

have an impairment or combination of impairments meeting or medically equal to the

severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at

21-23.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform a

full range of work at all exertional levels with certain non-exertional limitations including

being limited to only simple routine and repetitive tasks, no tasks requiring public

contact or more than occasional interactions with co-workers, no tasks requiring a

strong production pace element, and no work in environments with more than three or

four people present in the immediate area in which Plaintiff is working.  AR at 23-31.

The ALJ further found Plaintiff has no past relevant work ("PRW"), AR at 31, and that

given Plaintiff's RFC, age, limited education, ability to communicate in English, with

transferability of skills not relevant based on the lack of any PRW, Plaintiff was able to

perform other work existing in the national economy in significant numbers including as

a laundry laborer, evening industrial cleaner, classifier (laundry), and non-postal mail

clerk.  AR at 31-32.  Based on these findings, the ALJ determined Plaintiff is not

disabled as defined under the Act since the date of Plaintiff's disability benefits

application through the date of the ALJ's Decision.  *Id*. at 32.

Plaintiff raises several challenges to the ALJ's Decision including that the ALJ (1)

failed to properly evaluate the disability-supporting opinions of Joan Canzoneri,

Plaintiff's treating psychiatric nurse practitioner, Plaintiff's Memorandum at 17-19, (2)

impermissibly relied on cherry-picked evidence to justify his rejection of PNP

Canzoneri's well-supported opinions, *id*. at 19-24, and (3) mischaracterized evidence of

record to further support his rejection of PNP Canzoneri's disability-supporting opinions.

*Id*. at 24-29.  Plaintiff further argues her case be remanded solely for calculation of

benefits.  *Id*. at 30.  In opposition to Plaintiff's Motion and in support of Defendant's

Motion, Defendant argues the ALJ's RFC determination is supported by substantial

evidence, including medical opinion evidence, Defendant's Memorandum at 7-15,

Plaintiff has not met her burden of proving the RFC finding is not supported by

substantial evidence, *id*. at 15-20, the ALJ properly concluded PNP Canzoneri's opinion

is unpersuasive, *id*. at 20-26, and remand for calculation of benefits is unwarranted.  *Id*.

at 26-27.  In reply, Plaintiff argues the ALJ erred by impermissibly cherry-picking

evidence and ignoring objective evidence that conflicted with his conclusions.  Plaintiff's

Reply at 1-4.  The court's review of the administrative record shows that at the third step

of the sequential analysis, Plaintiff meets the criteria for Listings 12.03 (schizophrenia

spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related

disorders), 12.05 (intellectual disorder); 12.06 (anxiety and obsessive-compulsive

disorders), and 12.15 (trauma- and stressor-related disorders).  20 C.F.R. Pt. 404,

Subpt. P, App. 1 § 12.00 (Mental Disorders) ("§ 12.00__").

   In particular, as relevant in the instant case, to establish disability based on

Listings 12.03, 12.04, 12.05, or 12.06 and 12.15, the claimant must satisfy both the

initial medical criteria for the specific impairment, as well as certain mental functioning

criteria which are the same for Listings 12.03, 12.04, 12.05, 12.06, and 12.15.  For

Listings 12.03, 12.04, 12.06, and 12.15, the mental functioning criteria are located in

paragraph B of each listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.03B,

12.04B, 12.06B, 12.15B.  These same mental functioning criteria are located in

paragraph B2 for Listing 12.05.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05B2.

For purposes of this discussion, the mental functioning criteria for all five listings relevant to Plaintiff's action are referred to as the "paragraph B criteria."

In the instant case, although the ALJ plainly found Plaintiff met the initial medical criteria under Listing 12.05 pertaining to intellectual orders based on Plaintiff's full scale IQ score of 69 on adult testing, AR at 23 (referencing AR at 394),[5] the ALJ did not specifically address whether Plaintiff's mental impairments under Listings 12.03, 12.04, 12.06, and 12.15 met the initial medical criteria pertaining to the medical condition of each such listed impairment.  Nevertheless, the ALJ did address whether Plaintiff met the paragraph B criteria for Listings 12.03, 12.04, 12.06, and 12.15, strongly implying the ALJ found Plaintiff also met the medical requirements for such Listings.[6]  *See* AR at 21-22.  Regardless of whether the ALJ did, in fact, find Plaintiff meets the initial medical evidence criteria for Listings 12.03, 12.04, 12.06 and 12.15, because the ALJ definitely found Plaintiff meets such initial criteria for Listing 12.05, whether Plaintiff is disabled based on the Listings depends on whether Plaintiff meets the paragraph B criteria which are the same for all relevant Listings.[7]

---

[5] Although not addressed by the ALJ, that evidence in the record establishes Plaintiff's intellectual disorder began prior to attaining age 22, an additional consideration for Listing 12.05, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing 12.05B3, but not for Listing 12.03, 12.04, 12.06, or 12.15, cannot be disputed given the ALJ's decision was based on medical evidence dated prior to Plaintiff turning 22 on March 17, 2019.  *See* AR Court Transcript Index (showing February 7, 2019 as the latest date of medical records).  *See also* AR at 18 (referencing receipt of additional medical evidence, incorporated into the AR as Exhibits B17F and B18F, containing medical records dated March 20, 2017 to January 16, 2019).

[6] With regard to Listings 12.03, 12.04, 12.06 and 12.15, the ALJ also considered whether Plaintiff met the so-called "paragraph C criteria," but found she does not.  AR at 21.  That finding is not disputed and, thus, is not further discussed.  Further, the paragraph C criteria do not pertain to Listing 12.05.

[7] The court notes despite the critical relevance of the paragraph B criteria to the determination of whether Plaintiff is disabled, the parties do not discuss the criteria in great detail, focusing instead on the length of Plaintiff's mental health treatment, whether Plaintiff's schizophrenic psychosis returned, and whether Plaintiff's symptoms improved with medication and counseling.  *See*, *e.g.* Plaintiff's Memorandum at 23; Defendant's Memorandum at 10-11.  Further, insofar as any treating source reported Plaintiff denied psychiatric symptoms at any treatment session, *see*, *e.g.*, October 17, 2018 counseling session with Dr. Bakhai at which Plaintiff denied emotional problems, hallucinations/delusions, and suicidal or homicidal

The paragraph B criteria pertain to four areas of adaptive functioning including (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Subpt. P, App. 1 §§ 12.00E, 12.00F ("§ 12.00__").  To satisfy the paragraph B criteria, the claimant's mental disorder must result in an "extreme" limitation of one, or a "marked" limitation of two, of the four areas of mental functioning. § 12.00A2b (for Listings 12.03, 12.04, 12.06 and 12.15); § 12.00.H3a (referencing §§ 12.00E and 12.00F for Listing 12.05).

In the instant case, Plaintiff particularly relies, Plaintiff's Memorandum at 11, on the January 3, 2018 Medical Opinion Statement on which PNP Canzoneri placed checkmarks indicating Plaintiff was markedly limited in two of the four adaptive functioning areas, including interacting with others, § 12.00E2, and adapting and managing herself, § 12.00E4.  AR at 540-42.[8]  Because PNP Canzoneri assessed Plaintiff as markedly limited in two of the four paragraph B criteria, accepting the Medical Opinion Statement's findings would establish Plaintiff meets the criteria for disability benefits based on Listings 12.03, 12.04, 12.05, 12.06, and 12.15.[9]

---

ideation, *see*, *e.g.*, AR at 494, such symptoms are irrelevant to Plaintiff's borderline intellectual impairment.

[8] PNP Canzoneri also found Plaintiff was moderately limited in the remaining two adaptive functioning areas including understanding, remembering, and applying information, § 12.00E1, as well as concentrating, persisting, and maintaining pace, § 12.00E3.  AR at 540-41.

[9] Although PNP Canzoneri is a nurse practitioner, rather than a medical doctor, because Plaintiff filed her disability benefits application on April 27, 2017, the new regulations promulgated by the Commissioner on January 18, 2017, and effective as of March 27, 2017 apply.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).  Relevantly, unlike the former regulations that included the so-called "treating physician's rule" requiring controlling weight be granted to medical opinions issued by "acceptable medical sources" including licensed physicians and licensed psychologists," 20 C.F.R. § 416.921(a)(1), (2), the new regulations provide that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §

Significantly, evidence Defendant references in evaluating PNP Crawford's Medical

Opinion Statement and arguing Plaintiff is not markedly limited in the two relevant

adaptive functioning areas, including interacting with others and adapting and managing

herself, are not supported by the record.

> As relevant, interacting with others

> refers to the abilities to relate to and work with supervisors, co-workers, and the
> public.  Examples include: cooperating with others; asking for help when needed;
> handling conflicts with others; stating own point of view; initiating or sustaining
> conversation; understanding and responding to social cues (physical, verbal,
> emotional); responding to requests, suggestions, criticism, correction, and
> challenges; and keeping social interactions free of excessive irritability,
> sensitivity, argumentativeness, or suspiciousness.  These examples illustrate the
> nature of this area of mental functioning.  We do not require documentation of all
> of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E2

In the instant case, the evidence on which Defendant relies in arguing Plaintiff does not

meet the adaptive functioning area of interacting with others does not support

Defendant's argument.

Specifically, Defendant argues "the ALJ reasonably concluded that the findings of

irritable mood and limited judgment in social situations did not establish that Plaintiff

was disabled because the overall record showed a high degree of functionality,

including in social settings."  Defendant's Memorandum at 16-17 (referencing AR at 24-

28 (referencing AR at 496-97, 505, 509, 550-52, and 555-56)).  A review of those

referenced portions of the record, however, does not support this argument.  To wit, in

---

404.1520c(a).  "The agency will instead consider the factors found at § 404.1520c(c) during its review of
these sources."  *Schillo v. Kijakazi*, 31 F.4th 64, 71 (2d Cir. 2022).  Further, the 2017 amendments to the
regulations added advanced practice registered nurses (a category that includes nurse practitioners) to
the list of acceptable medical sources, which applies to Plaintiff's claim as it was filed after March 27,
2017. *Cherry v. Comm'r of Soc. Sec. Admin.*, 813 Fed.Appx. 658, 661 (2d Cir. 2020) (citing 20 C.F.R. §
404.1502(a)(7)).  Therefore, PNP Canzoneri's opinion can be given some weight, as well as Dr. Elberg's,
but not LCSW Giardina who is considered a nonmedical source.  20 C.F.R. § 404.1502(c)(3).

counseling sessions, psychiatrist Dr. Bakhai repeatedly evaluated Plaintiff's judgment

during social situations as "limited," AR at 496 (October 17, 2018), AR at 505 (June 11,

2018), and AR at 509 (April 30, 2018).  At other counseling sessions with MSW

Giardina, Plaintiff was reported as resistant to group therapy because she did not want

to be around others, and more time was needed for Plaintiff to build trust and rapport

with the counselor.  AR at 551-52 (March 13, 2018), 555-56 (September 21, 2018).

Insofar as Defendant argues the ALJ found Plaintiff interacted with friends,

shopped in the malls, took public transportation, and attended church, Defendant's

Memorandum at 16 (referencing AR at 25 (referencing AR at 49-50, 184-89, 266-30

[*sic*], 390, 551, and 562)), initially, page 25 of the AR does not reference those pages.

Nevertheless, a plain reading of the pages specified by Defendant establishes Plaintiff

testified at the administrative hearing that she tried to shop at the mall, but she does not

like being around a lot of people because it caused her anxiety and panic attacks, AR at

49, and Plaintiff denied spending time with friends.  AR at 50-51.  This is consistent with

Plaintiff's Adult Function Report completed in support of her disability benefits

application on which Plaintiff wrote that she does not go outside unless necessary

because she does not trust people, shops only when needed, went to the mall and

played tennis "every once in a while," but no longer went swimming, and did not talk to

as many people as she used to, and "sometimes" went to church.  AR at 184-87.

Plaintiff further reported having problems getting along with family, friends, neighbors

and others, and did not speak to many people.  *Id.* at 188.  Similarly, in his June 4, 2017

psychological evaluation of Plaintiff, consultative psychologist Dr. Fabiano opined

Plaintiff was moderately limited in her ability to "interact adequately with supervisors, co-

workers, and the public." *Id*. at 390.  MSW Giardina reported on November 13, 2018, that Plaintiff needed "to build trust with counselor," AR at 551, and on May 25, 2018, that Giardina's suggestion to increase counseling sessions from one to two times per month to facilitate Plaintiff in building trust with MSW Giardina was not well-received with Plaintiff shutting down and becoming more frustrated when MSW Giardina pushed the issue. *Id*. at 562.

Accordingly, the evidence in the record to which Defendant refers does not support the ALJ's Decision.  In contrast, in support of her motion, Plaintiff references numerous records pertaining to Plaintiff's difficulty interacting with others including counseling sessions with Dr. Elberg, Plaintiff's Memorandum at 27-28, and PNP Canzoneri. *Id*. at 24-26.

Specifically, during a July 31, 2017 counseling session with psychiatrist Dr. Elberg, in response to questions regarding Plaintiff's request for medications to control her "'thoughts,'" AR at 641, Plaintiff "refused to elaborate on these [thoughts] and spent much of the time appearing guarded and looking at the floor," AR at 641, and abruptly left the room when questioned about her "daily heavy cannabis use. . . ," which Dr. Elberg stated might precipitate Plaintiff's trauma symptoms. *Id*.  After Plaintiff's mother convinced Plaintiff to return to the room, stating to Plaintiff that "the truth hurts," Plaintiff thereafter answered questions "with terse and minimal verbiage." *Id*.  Dr. Elberg reported the "altercation" prevented obtaining a full history, *id*. at 641, and that "repair work" was crucial to moving forward with Plaintiff's treatment "in order to reestablish rapport and engage her in treatment and recovery." *Id*. at 644.  In a September 25, 2017 counseling session, Dr. Elberg again reported Plaintiff's responses to questions

"were minimal and terse, minimal eye contact," AR at 630, and that when Dr. Elberg

disagreed with Plaintiff's request for Adderall (for attention deficit hyperactivity disorder),

Plaintiff threatened to walk out.  *Id*.  Dr. Elberg's psychiatric examination of Plaintiff that

day revealed Plaintiff was "semi-cooperative, easily irritated, makes intermittent eye

contact [with] very little smiling."  *Id*. at 631.  At an October 23, 2017 counseling session,

Plaintiff "was sullen [with] minimal and resigned interaction" with Dr. Elberg.  *Id*. at 626.

Plaintiff's attitude "began as thinly-veiled cooperative, progressed to uncooperative

[with] minimal eye contact and interaction," and Plaintiff's judgment during social

situations was considered "limited."  *Id*. at 627.  On February 26, 2018, despite Dr.

Elberg's attempt "to use non-confrontational, open-ended questions," Plaintiff

responded "nothing" to general inquiries, was sullen, and disinterested, and promptly

ended the appointment by walking out of the room, closing the door behind her when

questioned about being in possession of marijuana.  AR at 605.

These reported counseling session notes by Dr. Elberg are consistent with the

Mental Residual Functional Capacity Questionnaire ("MRFC Questionnaire") PNP

Canzoneri completed on February 17, 2019, providing more detailed descriptions of

Plaintiff's mental impairments including clinical findings and narratives explaining how

Plaintiff's symptoms affect Plaintiff's ability to perform in a work setting.  AR at 545-49.

In particular, PNP Canzoneri reported Plaintiff's PTSD symptoms are "so intense and

intrusive" as to interfere with treatment, and Plaintiff "has trouble trusting & building

rapport, & is very avoidant," all of which PNP Canzoneri considered "characteristic of

her mental illness," and limited Plaintiff to attending therapy sessions only once a

month, with sessions limited to 20 to 30 minutes because that was all Plaintiff could

tolerate.  *Id*. at 545.  PNP Canzoneri reported Plaintiff's demeanor at therapy sessions was "very guarded with poor eye contact & poor expression of thoughts & feelings."  *Id*. PNP Canzoneri placed checkmarks in boxes indicating Plaintiff's symptoms included, *inter alia*, "emotional withdrawal or isolation."  *Id*. at 546.  With regard to metal abilities and aptitudes needed to do unskilled work, Plaintiff was seriously limited with regard to, *inter alia*, working in conditions with or proximity to others without being unduly distracted, and unable to meet competitive standards with regard to asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  *Id*. at 547.  PNP Canzoneri further reported Plaintiff "has a very hard time being around others [due to] severe lack of trust."  *Id*. at 548.

Nor is there any merit to Defendant's argument in support of the ALJ's conclusory statement, untethered to any specific page of the administrative record, that Plaintiff's "[m]ental status examinations are largely unremarkable except for mood, affect, and occasional or temporal guarded or non-cooperative behavior," AR at 21, that upon being discharged from her psychiatric hospitalization on February 23, 2017, "Plaintiff showed normal mental status examination findings, and her condition was deemed stable with treatment."  Defendant's Memorandum at 10 (citing AR at 377, 432, 437).  Rather, "[c]ycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  *Estrella v. Berryhill*, 925 F.3d

90, 97 (2d Cir. 2019) (quotation and brackets omitted).  In short, Defendant's contention

that the record demonstrates Plaintiff "showed a high degree of functionality including in

social settings," Defendant's Memorandum at 16-17, lacks substantial evidence.

Accordingly, PNP Canzoneri's report that Plaintiff is markedly limited with regard

to the adaptive functioning area of interacting with others is supported by substantial

evidence in the record.  As for the adaptive functioning area of adapting or managing

oneself, a relevant paragraph B criterion,

> This area of mental functioning refers to the abilities to regulate emotions, control
> behavior, and maintain well-being in a work setting. Examples include:
> Responding to demands; adapting to changes; managing your psychologically
> based symptoms; distinguishing between acceptable and unacceptable work
> performance; setting realistic goals; making plans for yourself independently of
> others; maintaining personal hygiene and attire appropriate to a work setting; and
> being aware of normal hazards and taking appropriate precautions. These
> examples illustrate the nature of this area of mental functioning. We do not
> require documentation of all of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E4.

Defendant does not specifically discuss the paragraph B criteria regarding

adapting or managing oneself, but generally points to portions of the record pertaining

to PNP Canzoneri's treatment records reflecting that on several occasions Plaintiff

reported good sleep, focus and concentration, and that she was not experiencing

delusions, or suicidal or homicidal ideations.  Defendant's Memorandum at 21-22.  In

short, the ALJ failed to address any of the negative findings by Plaintiff's treatment

providers, especially PNP Canzoneri, and MSW Giardina, relevant to the paragraph B

function of adapting or managing oneself.

Defendant points to two therapy sessions at which PNP Canzoneri reported

Plaintiff with a cooperative attitude and calm behavior, Defendant's Memorandum at 22

(citing AR at 497 (October 17, 2018) and 584 (January 16, 2019)), but a plain review of the January 16, 2019 treatment notes establishes that although PNP Canzoneri found Plaintiff's behavior was "appropriate, calm," Plaintiff's attitude was "semi-cooperative, guarded," and her mood and affect were "anxious, depressed, constricted."  AR at 584. Also on January 16, 2019, PNP Canzoneri reported Plaintiff complained of increased depression and anxiety, that Plaintiff had intended to apply for jobs, but had not turned in any applications, she experienced intrusive thoughts that increased her anxiety, and the anxiety and intrusive and racing thoughts interfered with Plaintiff's sleep, with Plaintiff sleeping only four hours a night, and Plaintiff remained hypervigilant and distrustful of others.  AR at 582-84.  Plaintiff asserted her inability to sleep left her "tired and sluggish during the day."  AR at 584.  PNP Canzoneri further reported Plaintiff was uncomfortable and fearful around people she did not know, and found it difficult to be in stores and other public places, and felt the urge to return home.  *Id*.  Accordingly, the portions of the record Defendant references do not establish Plaintiff is less than markedly limited in the adaptive functioning area of adapting and managing oneself.

In contrast, in arguing in support of her motion, Plaintiff references numerous records regarding Plaintiff's difficulty regulating her emotions, controlling her behavior, and maintain her well-being in a work-like setting.  Plaintiff's Memorandum at 27-28. Specifically, on March 19, 2018, MSW Giardina advised Plaintiff that because of Plaintiff's continued use of cannabis, Plaintiff was being referred out of the Navigate program to ECMC Outpatient Behavioral Health's MICA program ("MICA"), which cause Plaintiff to become tearful, then guarded and angry.  AR at 569.  Upon commencing treatment with PNP Canzoneri at MICA, Plaintiff is repeatedly reported as becoming

agitated, angry, tearful, guarded, and uncooperative during counseling sessions, particularly when questioned about her cannabis use. *See*, *e.g.*, AR 565 (May 25, 2018 (Plaintiff presented with "very depressed" mood, "behavior is very guarded; affect is blunted and tearful")); AR at 563 (August 6, 2018 (somber mood, guarded behavior, affect blunted to flat, "behavior very guarded"). Plaintiff's demeanor during counseling sessions is often described as hypervigilant and guarded. *See*, *e.g.*, AR at 495 (April 17, 2018 (Plaintiff feels "unable to trust" and is "hypervigilant"); AR 565 (May 25, 2018 ("behavior is very guarded; affect is blunted and tearful"). In a counseling session on April 30, 2018, PNP Canzoneri reported Plaintiff stated, "I have been having problems with wanting to jump in water." AR at 507. On May 25, 2018, Plaintiff admitted to MSW Giardina that she struggles and needs to help herself, but did not know how to and her medications and counseling did not help, complained of isolation, was able to identify one problem area to work on, but unable to set any goals. AR at 565-66. At an August 6, 2018, counseling session, MSW Giardina reported Plaintiff was somber and dysphoric with a blunted and flat affect, and remained very guarded. AR at 559. Plaintiff reported not feeling well and nauseous, and requested to leave the session early, which MSW Giardina reported was a common complaint of Plaintiff but that Plaintiff denied the nausea was related to Plaintiff's anxiety about the therapy session. AR at 560. MSW Giardina suggested increasing sessions from monthly to every two weeks, which Plaintiff initially resisted, but eventually agreed to meet once every three weeks, but for only 20 minutes instead of the regular 30 minutes. *Id*. MSW Giardina observed that Plaintiff often was anxious to leave counseling sessions early, which limited Plaintiff's ability to engage in the sessions. *Id*. PNP Canzoneri opined that

Plaintiff is very avoidant and has trouble with trust and building rapport which interfered with treatment.  AR at 545.

Moreover, the administrative record is replete with references to Plaintiff, at Plaintiff's request, being accompanied to her numerous counseling sessions by her mother, who also scheduled all of Plaintiff's therapy sessions and on whom PNP Canzoneri opined Plaintiff was dependent.  *See*, *e.g.*, AR at 503 (mother present at June 11, 2018 therapy session and answered questions for Plaintiff); AR at 505 (September 7, 2018 session with mother present); AR at 547 (PNP Canzoneri describing Plaintiff as "very dependent on mom," with Plaintiff having no "individual contact with treatment team," and "all appointments are handled through mom"). Furthermore, despite repeated suggestions that Plaintiff could improve her anxiety and PTSD symptoms by either completely eliminating or at least drastically reducing her use of cannabis, Plaintiff steadfastly refused to do so, often becoming angry and leaving counseling sessions.  *See*, *e.g.*, AR at 503-04 (reporting at June 11, 2018 counseling session that Plaintiff had recently transferred from the Navigate program because of continued use of cannabis which Plaintiff used once or twice a day).            .

In *Blocker v. Saul*, 2020 WL 1047737, at * 5 (W.D.N.Y. Mar. 4, 2020), this court found a claimant was not markedly limited in adapting or managing oneself where the record showed the claimant was not only capable of handling activities of daily living, but also preparing food and managing money, got along with his medical providers and staff, and there was no evidence demonstrating the claimant was significantly limited in his awareness of hazards or required supervision with daily tasks, and the claimant made appropriate eye contact, was goal directed and cooperative.  Similarly, in

*Jeannette T. v. Kijakazi*, 2022 WL 1115101, at * 7 (D.Conn. Apr. 14, 2022), the claimant's ability to adapt or manage herself was determined to be only mildly limited where the claimant could, *inter alia*, "independently complete her activities of daily living including cooking, paying bills, and driving[ ]."  In contrast, in the instant case, as discussed above, the record establishes that although Plaintiff can perform such activities of daily living as grooming, preparing simple meals, and tending to her personal needs, she is unable to pay bills and does not drive, Plaintiff is accompanied to counseling sessions by her mother who handles all of Plaintiff's appointments, despite years of therapy and medication, Plaintiff repeatedly presents at counseling sessions as tearful, angry, hypervigilant, guarded, makes little eye contact, blunted and flat affect or depressed, and often so anxious that she cuts the therapy session short, and Plaintiff persists in using cannabis despite repeated requests by her mental health treatment providers that Plaintiff cease or drastically reduce using cannabis, which use also resulted in Plaintiff's termination from the Navigate program.  Accordingly, substantial evidence in the record establishes Plaintiff is markedly limited with regard to the adaptive functioning area of managing or adapting oneself.

Because the administrative record establishes Plaintiff meets the paragraph B criteria, as well as the remaining criteria for Listings 12.03, 12.04, 12.05, 12.06 and 12.15, application of the five-step disability analysis establishes Plaintiff is disabled. See *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) ("The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability.") (citations omitted).  Nevertheless, as discussed, Discussion, *supra*, at 9, where, as here, disability based on a mental impairment is

found pursuant to the five-step analysis, yet there is evidence in the record of DAA, the disability analysis continues and the ALJ is required to consider whether the DAA is material to the disabling nature of the mental impairment, *i.e.*, whether the evidence establishes the mental disorder would be disabling with or without the DAA.  20 C.F.R. § 416.935(a) ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness."); *Peter W.*, 2022 WL 523744, at ** 9-10 (N.D.N.Y. Feb. 22, 2022); *Cage*, 692 F.3d at 123.

In the instant case, although the ALJ found Plaintiff with cannabis use disorder, AR at 20, the ALJ also equivocated that "there do not appear to be significant objective abnormalities in the record regardless of the claimant's use."  AR at 26.  Because the ALJ did not find Plaintiff was disabled under the five-step sequential analysis, the ALJ did not consider the materiality of Plaintiff's use of cannabis to a disability determination.

In particular, the Contract with America Advancement Act (the "CAAA") enacted in 1996, amended the Social Security Act by providing "[a]n individual shall not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 1382c(a)(3)(J)).  Critical to the analysis is "whether [the SSA] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol."  20 C.F.R. § 416.935(b)(1); *see also* 20 C.F.R. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the

determination of disability," thus requiring disability be denied).  *See Williams v. Colvin*, 2016 WL 1553443, at \*7 (W.D.N.Y. Apr. 18, 2016) (remanding for the ALJ to make DAA materiality determination).

The framework to be used by ALJs in evaluating the materiality of a claimant's drug or alcohol abuse ("DAA") is set forth in SSR 13-2p,[10] *Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA),* available at 2013 WL 621536 (SSA Feb. 20, 2013) ("SSR 13-2p"). First, the ALJ considers whether a claimant is disabled considering all the claimant's impairments as well as the DAA. SSR 13-2p. 2013 WL 621536, at \*5-6.  If the claimant would be disabled, the ALJ then considers whether the combined effects of the claimant's impairments, aside from the DAA, would result in an RFC determination precluding work.  *Id.*  Significantly, "the DAA regulations and SSR 13-2 'only contemplate an analysis concerning the materiality of drug and/or alcohol abuse *after* a claimant is found disabled at step five.'"  *Peter W.*, 2022 WL 523744, at \* 10 (quoting *Anderson v. Berryhill*, 2017 WL 1154993, at \*11 (E.D.N.Y. March 27, 2017) (italics in *Peter W.*).  The ALJ is permitted to draw inferences from evidence during any periods of abstinence by the claimant including the length and recency of the abstinence period and whether the severity of the co-occurring impairment increased after the period of abstinence ended.  *Id.,* 2022 WL 523744, at \* 10.  It is the claimant's burden to establish the DAA is immaterial to the Commissioner's determination. *See Cage*, 692 F.3d at 124 ("proving DAA immateriality is best understood as part of a claimant's general burden of proving that [ ]he is disabled.");

---

[10] "SSR" refers to Social Security Rulings which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

*Howard J. v. Saul*, 2021 WL 978843, at *4 (W.D.N.Y. March 16, 2021) (summarizing SSR 13-2p.).

Although in the instant case Plaintiff, assuming the undersigned finds Plaintiff disabled pursuant to the five-step sequential analysis, seeks remand only for calculation of benefits, Plaintiff's Memorandum at 29-30, that Plaintiff suffers from a cannabis use disorder, as the ALJ found, AR at 20, requires the ALJ to consider whether Plaintiff's cannabis use was material to the disability determination.  Because the ALJ did not definitively do so, upon remand, the ALJ should conduct the required materiality analysis.  *See Williams*, 2016 WL 1553443, at *7.  Accordingly, judgment on the pleadings should be GRANTED in part, and DENIED in part, as to Plaintiff and DENIED as to Defendant.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 11) is GRANTED in part and DENIED in part; Defendant's Motion (Dkt. 13) is DENIED; the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July 26th, 2022
                  Buffalo, New York